1   ERIC MECKLEY, State Bar No. 168181
    MORGAN, LEWIS & BOCKIUS LLP
2   One Market, Spear Street Tower
    San Francisco, CA 94105-1126
3   Telephone: 415.442.1000
    Facsimile: 415.442.1001
4   E-mail: emeckley@morganlewis.com

5   JENNIFER A. LOCKHART, State Bar No. 236972
    MORGAN, LEWIS & BOCKIUS LLP
6   2 Palo Alto Square
    3000 El Camino Real, Suite 700
7   Palo Alto, CA 94306-2122
    Telephone: 650.843.4000
8   Facsimile: 650.843.4001
    E-mail: jlockhart@morganlewis.com
9
    Attorneys for Defendants
10  JPMORGAN CHASE & CO., JPMORGAN CHASE
    BANK, N.A., and EMC MORTGAGE CORP.
11
12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

                  SAN FRANCISCO DIVISION
14

15  MARY ANN ADLAO, and MARIAN           Case No. 3:10-cv-04508-EMC
    WILLIAMS, individually, on behalf of
16  others similarly situated, and on behalf of   **DECLARATION OF TERESA A. LOWELL**
    the general public,                           **IN SUPPORT OF DEFENDANTS'**
17                                                 **MOTION TO COMPEL ARBITRATION**
                  Plaintiffs,                      **AND STAY JUDICIAL PROCEEDINGS**
18
                  vs.                    Date:      December 22, 2010
19                                       Time:      10:30 a.m.
    JPMORGAN CHASE & CO.,                Dept.:     Courtroom c, 15th Floor
20  JPMORGAN CHASE BANK, N.A., and       Judge:     Hon. Edward M. Chen
    EMC MORTGAGE CORP., as successors
21  in interest to BEAR STEARNS, INC. and
    ENCORE CREDIT CORP., and Does 1-     Date Action Filed: October 5, 2010
22  50, inclusive                        Trial Date: None set

23                  Defendants.

24
        I, Teresa A. Lowell, declare as follows:
25
        1.      I submit this declaration in support of Defendants' Motion to Compel Arbitration
26
    and Stay Proceedings. All of the statements made herein are based upon my own personal
27
    knowledge and review of company records, and if called to testify, I would and could testify
28

DB2/22032460.1

DECL. OF TERESA A. LOWELL ISO DEFS' MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
(CASE NO.: 3:10-CV-04508-EMC)

truthfully to the contents of this declaration.

2.      I am the Human Resources Business Partner, Manager II for the Mortgage Services Support Division of Chase Home Finance unit of JPMorgan Chase (the "Company"). In connection with my job duties and responsibilities, I have access to, update and use official Company personnel information and files in the course of my ordinary duties, as well as administering and implementing certain Human Resources policies.

3.      Plaintiffs Mary Ann Adlao ("Adlao") and Marian Williams ("Williams") were and are employed by EMC Mortgage Corp. ("EMC"). EMC was a subsidiary of the Bear Stearns Companies, Inc. ("Bear Stearns"). JPMorgan Chase & Co. ("Chase") acquired Bears Stearns and, as a result, EMC became a wholly owned indirect corporate subsidiary of Chase.

4.      EMC's business operations are part of the financial industry and operate in California and in multiple states throughout the nation.

5.      Attached as Exhibit A is a true and correct copy of the arbitration agreement entitled "Attachment A – Arbitration of Disputes" between BSRM and Adlao, which Adlao signed on or about November 9, 2006. This agreement is maintained in Adlao's personnel file.

6.      Attached as Exhibit B is a true and correct copy of a second arbitration agreement entitled "Arbitration for California", which Adlao signed on or about February 13, 2007, and which is maintained in Adlao's personnel file.

7.      Attached as Exhibit C is a true and correct copy of the arbitration agreement entitled "Attachment A – Arbitration of Disputes", which Williams signed on or about November 7, 2006. This agreement is maintained in Williams' personnel file.

8.      Attached as Exhibit D is a true and correct copy of the transition letter provided to Williams during the acquisition of Bear Stearns by Chase, dated May 9, 2008. Williams signed this offer letter on May 12, 2008. This transition letter is maintained in Williams' personnel file.

/ /

/ /

/ /

DECL. OF TERESA A. LOWELL ISO DEFS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
(CASE NO.: 3:10-CV-04508-EMC)

1

//

2

     I declare under penalty of perjury under the laws of the State of Ohio that the foregoing is

3

true and correct.

4

     Executed this 10th day of November, 2010 at Columbus (Franklin County), Ohio

5

6

                       Teresa A. Lowell

7

                       Human Resources Business Partner

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/22032460.1

2

DECL. OF TERESA A. LOWELL ISO DEFS' MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
(CASE NO.: 3:10-CV-04508-EMC)

# EXHIBIT A



Bear Stearns
Residential Mortgage Corp.
9201 E. Mountain View Rd.
Suite 210
Scottsdale, AZ 85258
(480) 358-2000
www.beardirect.net

November 6, 2006

Mary Ann Adlao
382 Calle Guymas
San Clemente, CA 92672

Re:  Offer of Employment

Dear Mary Ann:

It is the Firm's pleasure to confirm to you the offer of new employment with Bear Stearns Residential Mortgage Corporation ("BSRM" or the "Company")[1], a wholly owned subsidiary of The Bear Stearns Companies Inc. ("Bear Stearns" or the "Firm")[2], in BSRM's Sub-Prime Division (the "Division"), in California.   The Company's offer, and all terms and conditions contained herein, shall not become effective until the consummation of the transaction between Bear Stearns and Encore Credit Corp. and ECC Capital Corporation (the "Effective Date"). Should Bear Stearns and Encore Credit Corp. and ECC Capital Corporation fail to consummate such transaction for any reason, this offer letter shall be null and void and without any force or effect.

1.    **Compensation**

(a)      You will receive a salary at the annualized rate of REDACTED less any applicable deductions and withholdings, payable on a bi-weekly, semi-monthly or other periodic basis as determined by the Company.

(b)      In addition, depending upon your job category and work location, you may be eligible to participate in one of the Company's commission or bonus policies, plans or schedules. Any commission or bonus payment shall be governed by the express terms of the plan, policy, or schedule under which it is paid.  This should not be construed, however, as requiring BSRM to establish or maintain any such commission or bonus policy, plan or schedule. Further, if and to the extent BSRM establishes and/or maintains any commission or bonus policy, plan, or schedule, BSRM shall have the sole and absolute discretion to revise or eliminate such policy, plan, or schedule, or to revise your compensation (including as required by applicable law), at any time.

(c)      You acknowledge and agree that your employment with Encore Credit Corp. and/or ECC Capital Corporation shall cease and your new employment shall commence with BSRM thereafter.  As such, BSRM and/or Bear Stearns shall not be responsible for any compensation or

---

[1]      Your employment may be transferred or seconded to another subsidiary of The Bear Stearns Companies Inc. appropriate for the job for which you are hired as determined by The Bear Stearns Companies Inc. in its sole discretion.

[2]      You will be paid out of a payroll master of the Firm appropriate for the job for which you are hired as determined by the Firm in its sole discretion.

benefits to which you may be entitled for work performed prior to the commencement of your new employment with BSRM. Similarly, any deficits or obligations owed by you to Encore Credit Corp. and/or ECC Capital Corporation incurred prior to the commencement of your new employment with BSRM shall not transfer to BSRM and/or the Firm.

### 2.    Employee-At-Will

BSRM believes that it is important that both you and the Company are free to terminate the employment relationship at any time if either is dissatisfied. You, as all employees of the Company, will therefore be an **employee-at-will**, and nothing contained herein shall destroy your **employee-at-will** status at BSRM. This means that your employment may be terminated at any time by the Company with or without cause and with or without notice, and nothing in this letter should be construed to create any continuing contractual obligations on the part of the Company. Likewise, you may terminate the employment relationship at any time, with or without cause and with or without notice.

### 3.    Compliance With Firm Policies

While you are employed by the Company, you will be entitled to the benefit of, and your employment will be subject to, all of the Company's and Firm's then current rules, regulations and practices, including the Firm's Compliance Manual, policies of confidentiality and the Firm's Code of Business Conduct and Ethics. However, BSRM may alter terms and conditions of your employment at any time, with or without notice.

### 4.    Commencement Of Employment By BSRM

(a)     Your employment with BSRM will commence on or about the Effective Date.

(b)     You represent that you will obtain and transfer to BSRM (or any affiliate to which you may be assigned) any and all required regulatory approvals and registrations to the extent required by your position.

(c)     You affirmatively represent that you have no relative employed by BSRM or its affiliates, in keeping with the Company's anti-nepotism policy, except as otherwise previously disclosed to the Company.

(d)     Any employment with the Company is contingent upon completion of the Company's customary post-offer and pre-employment procedures including, but not limited to, a drug/alcohol screen and reference checks. Should you not qualify for employment because of failure to pass the Company's pre-employment procedures and standards noted above, including the post-offer and pre-employment check, none of the financial obligations noted herein will be applicable and any payment not yet due is voided and need not be paid by the Company.

### 5.    Arbitration Of Disputes

Your employment with BSRM is contingent upon your agreement to and execution of the pre-dispute arbitration clause attached hereto as "Attachment A" so that should any controversy or dispute arise in connection with your employment, the cessation of your employment or the interpretation of this offer letter, you and the Company agree to arbitrate any and all such claims.

This offer supersedes any previous (written or oral) agreement or offer between you and the Company.   Please indicate your agreement to accept employment by BSRM on the above terms by signing the enclosed copy of this letter and Attachment A and returning the executed copies to my attention.   We look forward to having you join our organization.

Sincerely yours,
**BEAR STEARNS RESIDENTIAL MORTGAGE**

Maureen McNicholas
Bear, Stearns & Co. Inc.
Senior Managing Director
Human Resources

Read, accepted and agreed to:

Mary Ann Adlao

Date

## ATTACHMENT A
### Arbitration Of Disputes

You and the Company both specifically and knowingly and voluntarily agree to a pre-dispute arbitration clause so that should any controversy or dispute arise in connection with your employment, the cessation of your employment, or the interpretation of this offer letter, you and the Company agree to arbitrate any and all such claims before a neutral panel of the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE") (pursuant to their respective rules, including those related to discovery) at a site in Los Angeles, California. In the event both the NASD and NYSE decline jurisdiction in connection with any such matter, the parties agree instead to arbitration to be administered by JAMS pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness at a JAMS hearing site in Los Angeles, California. You and the Company further agree that, in the course of any arbitration arising in connection with your employment, the cessation of your employment, or the interpretation of this offer letter, each party (a) will request that a written award be issued by the panel that is supported by essential findings of fact and conclusions of law, (b) is entitled to receive in the arbitration any and all relief they would be entitled to receive in a court proceeding, (c) agrees that you will not be required to pay any fees in the arbitration other than the fees you would be required to pay in a court proceeding, (d) each party shall pay its own costs and attorneys' fees, if any; provided, however, that if either party prevails on a claim which affords the prevailing party an award of attorneys' fees, then the panel may award reasonable attorneys' fees to the prevailing party, consistent with applicable law. You and the Company knowingly and voluntarily agree to enter into this arbitration clause and to waive any rights that might otherwise exist to request a jury trial or other court proceeding (except to the extent necessary to enforce judgment of the panel's decision). The parties' agreement to arbitrate disputes includes, but is not limited to, any claims of unlawful discrimination and/or unlawful harassment under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the state and local laws of Los Angeles and California, including but not limited to the California Fair Employment and Housing Act, the California Moore-Brown-Roberti Family Rights Act, the California Civil Code, the California Constitution, the California Labor Code, and any other federal, state or local law relating to discrimination in employment or relating to wage and hour claims, and any other statutory or common law claim. You and the Company agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or relating to employment with BSRM, the cessation of that employment, or the interpretation of this offer letter. Both parties reserve the right to seek and obtain provisional remedies in accordance with applicable law. Moreover, judgment in a court of competent jurisdiction may be had on said decision and award of the panel. For these purposes, the parties agree to submit to the jurisdiction of the state and federal courts located in Los Angeles, California.

Read, accepted and agreed to:

Mary Ann Adlao

Date

# EXHIBIT B

## ARBITRATION FOR CALIFORNIA

In consideration for my employment or continued employment with Bear, Stearns & Co. Inc., any of its affiliates and subsidiaries, including but not limited to, Bear, Stearns Securities Corp.; EMC; Bear Stearns Mortgage Capital Corporation; and Custodial Trust Company (together referred to herein as "Bear Stearns" or the "Firm"), Bear Stearns and I (the "Parties") hereby agree to arbitrate any and all such controversies, disputes and claims before a neutral panel of the National Association of Securities Dealers, Inc. (pursuant to its rules, including those related to discovery) in the location nearest to the office where I work. In the course of any arbitration pursuant to this Agreement, the Firm and I agree (a) to request that a written award be issued by the panel (b) that each side is entitled to receive any and all relief they would be entitled to receive in a court proceeding, and (c) agree that I will not be required to pay any fees in the arbitration that are greater than the fees I would be required to pay in a court proceeding. The Parties knowingly and voluntarily agree to enter into this arbitration clause and to waive any rights that might otherwise exist to request a jury trial or other court proceeding, except that both Parties reserve the right to seek and obtain provisional remedies from a court in accordance with applicable law.

The Parties' agreement to arbitrate disputes includes, but is not limited to, any claims of unlawful discrimination and/or unlawful harassment under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Pregnancy Discrimination Act or any other federal, state or local law relating to discrimination in employment and any claims relating to wage and hour claims and any other statutory or common law claims. If any portion of this Agreement is found unenforceable, that portion shall fail while the remainder of this Agreement remains in full force and effect.

I have hereby read the foregoing statements and agree to the terms as a condition of my employment or continued employment.

_____
Employee Signature

_____
Employee Name (Printed)

2/13/07
_____
Date

**BEAR STEARNS COPY**

# EXHIBIT C

# BEAR STEARNS

Bear Stearns
Residential Mortgage Corp.
9201 E. Mountain View Rd.
Suite 210
Scottsdale, AZ 85258
(480) 358-2000
www.beardirect.net

November 6, 2006

Marian Williams
11396 Greyson Road
Moreno Valley, CA 92557

                Re:  Offer of Employment

Dear Marian:

It is the Firm's pleasure to confirm to you the offer of new employment with Bear Stearns Residential Mortgage Corporation ("BSRM" or the "Company")[1], a wholly owned subsidiary of The Bear Stearns Companies Inc. ("Bear Stearns" or the "Firm")[2], in BSRM's Sub-Prime Division (the "Division"), in California.   The Company's offer, and all terms and conditions contained herein, shall not become effective until the consummation of the transaction between Bear Stearns and Encore Credit Corp. and ECC Capital Corporation (the "Effective Date"). Should Bear Stearns and Encore Credit Corp. and ECC Capital Corporation fail to consummate such transaction for any reason, this offer letter shall be null and void and without any force or effect.

1.       **Compensation**

(a)       You will receive a salary at the annualized rate of $_{REDACTED}$ less any applicable deductions and withholdings, payable on a bi-weekly, semi-monthly or other periodic basis as determined by the Company.

(b)       In addition, depending upon your job category and work location, you may be eligible to participate in one of the Company's commission or bonus policies, plans or schedules. Any commission or bonus payment shall be governed by the express terms of the plan, policy, or schedule under which it is paid.  This should not be construed, however, as requiring BSRM to establish or maintain any such commission or bonus policy, plan or schedule. Further, if and to the extent BSRM establishes and/or maintains any commission or bonus policy, plan, or schedule, BSRM shall have the sole and absolute discretion to revise or eliminate such policy, plan, or schedule, or to revise your compensation (including as required by applicable law), at any time.

(c)       You acknowledge and agree that your employment with Encore Credit Corp. and/or ECC Capital Corporation shall cease and your new employment shall commence with BSRM thereafter.  As such, BSRM and/or Bear Stearns shall not be responsible for any compensation or

---

[1]       Your employment may be transferred or seconded to another subsidiary of The Bear Stearns Companies Inc. appropriate for the job for which you are hired as determined by The Bear Stearns Companies Inc. in its sole discretion.

[2]       You will be paid out of a payroll master of the Firm appropriate for the job for which you are hired as determined by the Firm in its sole discretion.

benefits to which you may be entitled for work performed prior to the commencement of your new employment with BSRM. Similarly, any deficits or obligations owed by you to Encore Credit Corp. and/or ECC Capital Corporation incurred prior to the commencement of your new employment with BSRM shall not transfer to BSRM and/or the Firm.

2. **Employee-At-Will**

BSRM believes that it is important that both you and the Company are free to terminate the employment relationship at any time if either is dissatisfied. You, as all employees of the Company, will therefore be an **employee-at-will**, and nothing contained herein shall destroy your **employee-at-will** status at BSRM. This means that your employment may be terminated at any time by the Company with or without cause and with or without notice, and nothing in this letter should be construed to create any continuing contractual obligations on the part of the Company. Likewise, you may terminate the employment relationship at any time, with or without cause and with or without notice.

3. **Compliance With Firm Policies**

While you are employed by the Company, you will be entitled to the benefit of, and your employment will be subject to, all of the Company's and Firm's then current rules, regulations and practices, including the Firm's Compliance Manual, policies of confidentiality and the Firm's Code of Business Conduct and Ethics. However, BSRM may alter terms and conditions of your employment at any time, with or without notice.

4. **Commencement Of Employment By BSRM**

(a)     Your employment with BSRM will commence on or about the Effective Date.

(b)     You represent that you will obtain and transfer to BSRM (or any affiliate to which you may be assigned) any and all required regulatory approvals and registrations to the extent required by your position.

(c)     You affirmatively represent that you have no relative employed by BSRM or its affiliates, in keeping with the Company's anti-nepotism policy, except as otherwise previously disclosed to the Company.

(d)     Any employment with the Company is contingent upon completion of the Company's customary post-offer and pre-employment procedures including, but not limited to, a drug/alcohol screen and reference checks. Should you not qualify for employment because of failure to pass the Company's pre-employment procedures and standards noted above, including the post-offer and pre-employment check, none of the financial obligations noted herein will be applicable and any payment not yet due is voided and need not be paid by the Company.

5. **Arbitration Of Disputes**

Your employment with BSRM is contingent upon your agreement to and execution of the pre-dispute arbitration clause attached hereto as "Attachment A" so that should any controversy or dispute arise in connection with your employment, the cessation of your employment or the interpretation of this offer letter, you and the Company agree to arbitrate any and all such claims.

This offer supersedes any previous (written or oral) agreement or offer between you and the Company. Please indicate your agreement to accept employment by BSRM on the above terms by signing the enclosed copy of this letter and Attachment A and returning the executed copies to my attention. We look forward to having you join our organization.

Sincerely yours,
**BEAR STEARNS RESIDENTIAL MORTGAGE**

*Maureen McNicholas*

Maureen McNicholas
Bear, Stearns & Co. Inc.
Senior Managing Director
Human Resources

Read, accepted and agreed to:

*Marian De Williams*

Marian Williams
11/07/2006
Date

## ATTACHMENT A
### Arbitration Of Disputes

You and the Company both specifically and knowingly and voluntarily agree to a pre-dispute arbitration clause so that should any controversy or dispute arise in connection with your employment, the cessation of your employment, or the interpretation of this offer letter, you and the Company agree to arbitrate any and all such claims before a neutral panel of the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE") (pursuant to their respective rules, including those related to discovery) at a site in Los Angeles, California. In the event both the NASD and NYSE decline jurisdiction in connection with any such matter, the parties agree instead to arbitration to be administered by JAMS pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness at a JAMS hearing site in Los Angeles, California. You and the Company further agree that, in the course of any arbitration arising in connection with your employment, the cessation of your employment, or the interpretation of this offer letter, each party (a) will request that a written award be issued by the panel that is supported by essential findings of fact and conclusions of law, (b) is entitled to receive in the arbitration any and all relief they would be entitled to receive in a court proceeding, (c) agrees that you will not be required to pay any fees in the arbitration other than the fees you would be required to pay in a court proceeding, (d) each party shall pay its own costs and attorneys' fees, if any; provided, however, that if either party prevails on a claim which affords the prevailing party an award of attorneys' fees, then the panel may award reasonable attorneys' fees to the prevailing party, consistent with applicable law. You and the Company knowingly and voluntarily agree to enter into this arbitration clause and to waive any rights that might otherwise exist to request a jury trial or other court proceeding (except to the extent necessary to enforce judgment of the panel's decision). The parties' agreement to arbitrate disputes includes, but is not limited to, any claims of unlawful discrimination and/or unlawful harassment under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the state and local laws of Los Angeles and California, including but not limited to the California Fair Employment and Housing Act, the California Moore-Brown-Roberti Family Rights Act, the California Civil Code, the California Constitution, the California Labor Code, and any other federal, state or local law relating to discrimination in employment or relating to wage and hour claims, and any other statutory or common law claim. You and the Company agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or relating to employment with BSRM, the cessation of that employment, or the interpretation of this offer letter. Both parties reserve the right to seek and obtain provisional remedies in accordance with applicable law. Moreover, judgment in a court of competent jurisdiction may be had on said decision and award of the panel. For these purposes, the parties agree to submit to the jurisdiction of the state and federal courts located in Los Angeles, California.

Read, accepted and agreed to:

*Marian Williams*

Marian Williams

11/07/2006

Date

# EXHIBIT D

**JPMorgan** ⬛

May 9, 2008

Marian Williams
11396 Greyson Road
Moreno Valley, CA 92557

Dear Marian:

JPMorgan Chase & Co. ("JPMorgan Chase") is very pleased to offer you employment on and after the closing date of the anticipated merger between The Bear Stearns Companies Inc. ("Bear Stearns") and JPMorgan Chase. The skills and experience that you possess will be important to the success of the combined firm. You will be employed by your current Bear Stearns employer entity or any successor entity (the "Firm") until further notice.

Please take a moment to carefully review the information below. This letter contains the entire understanding of the parties and supersedes any prior verbal or written communication with respect to this offer and with respect to your compensation or employment with Bear Stearns. This offer may only be modified in a document signed by the parties referring specifically to this offer.

"Merger Date" as used in this letter means the date the merger closes in accordance with the Agreement and Plan of Merger by and between The Bear Stearns Companies Inc. and JPMorgan Chase & Co. dated as of March 16, 2008, as amended (the "Merger Agreement").

**Position:**
As of the Merger Date, your position will be in the Investment Bank division.

**Base Salary:**
You will be paid an annualized base salary of  REDACTED

**Special Retention Stock Grant:**
As a retained employee, on the day following the Merger Date or as soon as practicable thereafter, you will be granted a one-time award of JPMorgan Chase Restricted Stock Units ("Retention Grant") equal to your total performance year 2007 bonus of $     . The number of Restricted Stock Units will be determined by dividing this amount by the Fair Market Value ("FMV") of one share of JPMorgan Chase common stock on the award date. For purposes of this offer letter, FMV equals the average of the high and low selling prices of JPMorgan Chase common stock on the NYSE composite tape on the award date. The restricted stock units covered by the Retention Grant will vest in two equal installments on July 25, 2010 and July 25, 2011. Vesting is conditioned on your continued employment with the Firm or another subsidiary or JPMorgan Chase as of each vesting date and the terms and conditions set forth in the associated award agreement. If at any time prior to vesting of your Retention Grant, your employment is terminated by the Firm as a result of a job elimination (as so designated by the Firm) or your employment terminates as a result of your death or total disability as defined in the award agreement associated with the Retention Grant, then subject to your timely execution of a release of all employment related claims in a form provided by the Firm, you will be eligible to vest or continue to vest in your Retention Grant.

**Benefits:**
We are reviewing the benefits of Bear Stearns and JPMorgan Chase and will provide you and other employees with additional information shortly. You will continue your coverage under the terms of Bear Stearns' plans until further notice.

**Employment Relationship:**
This letter does not affect the at-will status of your employment with your Bear Stearns employer prior to the Closing Date. Your employment with the Firm on and after the Closing Date remains at-will, which means that either you or the Firm may terminate your employment at any time, for any or no reason.

**Additional Terms and Conditions:**
This offer is contingent upon and subject to all of the following:
- closing of the merger in accordance with the Merger Agreement;
- your continued employment by Bear Stearns or one of its subsidiaries through the Merger Date;
- satisfactory completion of any forms and processing necessary for employment and establishment of identity and valid employment eligibility for JPMorgan Chase;
- your representation, by signing below, that prior to the Merger Date you have not violated any of Bear Stearns' or the Firm's policies or engaged in misconduct related to your duties for Bear Stearns or the Firm. (Examples of misconduct include without limitation disclosure of confidential information, improper accounting for trades or failure to comply with internal controls). If JPMorgan Chase or the Firm discovers that you have violated any such policies or engaged in misconduct, this offer will be rescinded and your employment will be terminated and, to the extent legally permitted, the Firm reserves the right to recover the value of any compensation provided to you under this offer, including any special equity awards granted.

Your employment on and after the Merger Date will continue to be subject to applicable policies and procedures, as amended from time to time by JPMorgan Chase or the Firm in their sole discretion. You also will remain bound by any mandatory arbitration, non-solicitation or other agreements in effect between you and Bear Stearns or the Firm on the Merger Date, except to the extent that such agreements conflict with the terms of this letter. It is your responsibility to read and understand these policies and agreements, and if you have any questions now or in the future, it is your responsibility to make the appropriate inquiries.

With the formalities covered, let us again say that we look forward to working with you.

Please indicate your acceptance by signing this letter and returning it to Terri Lowell, 800 State Highway 121 Bypass, Lewisville, TX 75067 no later than May 16, 2008, on which date this offer will expire. Please retain a copy of this letter for your records. You can also reach out to Terri at (214) 626-7409 with any questions you may have regarding this offer.

Sincerely,

*Justin J. Kulo*

Justin J. Kulo
Investment Bank Human Resources

Agreed and Accepted by:

*Marian Williams*

Marian Williams
Bear Stearns ID 1226252

Date:

05/12/2008

**Acceptance and Code Affirmation**

Upon signing this letter I accept the terms described above. I also affirm that I have read and understand the JPMorgan Chase Code of Conduct, and agree as a condition of employment with the Firm to comply with the Code as amended and revised from time to time.

- I understand that I can access the Code via the Internet at http://www.JPMorgan Chase.com >About Us>Governance>Code of Conduct prior to joining the Firm, and through JPMorgan Chase's intranet once I begin employment.

- I am aware of the specific policies related to personal investments for certain businesses and support units, and I understand that, if these are applicable to me, I will have thirty days after my start date to ensure my compliance with the designated broker requirements.

- I acknowledge that the Code requires that certain outside activities (even if already begun) be approved in writing. I agree that, if any such required approval is denied, I will cease the relevant activity immediately.

- I understand that all employees have post-employment responsibilities regarding confidential information. I understand further that if I am, or become, a Senior-Level Employee*, that Senior-Level Employees have certain additional responsibilities that continue after their employment with the Firm terminates, including restrictions on solicitation and hiring of JPMorgan Chase's and the Firm's employees and solicitation of certain customers. I understand that I am responsible for knowing which post-employment responsibilities apply to me and I agree to comply with all applicable requirements.

\* The term "Senior-Level Employee" is currently defined as any employee whose (a) annual base salary rate is REDACTED (or the local currency equivalent) or higher, OR (b) annual total cash compensation is REDACTED (or the local currency equivalent) or higher.

Accepted:   *Marian D. Williams*   Date: 05/12/2008
            Marian Williams
            Bear Stearns ID 1226252

- 3 -