UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARY ANN ADLAO and MARY WILLIAMS, individually and on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., and EMC MORTGAGE CORP., as successors in interest to BEAR STEARNS, INC., and ENCORE CREDIT CORP., and Does 1-59, inclusive,<br><br>Defendants. | Case No:  C 10-04508 SBA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Dkt. 13 |

    Plaintiffs Mary Ann Adlao ("Adlao") and Marian Williams ("Williams") bring the instant wage and hour collective and class action on behalf of themselves and all others similarly situated against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and EMC Mortgage Corp. ("EMC"), as successors-in-interest to Bear Stearns, Inc., and Encore Credit Corporation.  Plaintiffs allege that Defendants misclassified them as "exempt" employees and, inter alia, failed to pay them overtime wages or provide them with meal and rest periods in violation of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 207, and various California laws.

    The parties are presently before the Court on Defendants' Motion to Compel Arbitration and Stay Judicial Proceedings, and Defendants' ancillary request to stay the

action pending the Supreme Court's ruling in <u>AT&T Mobility LLC v. Concepcion</u>, Sup. Ct. Docket No. 09-893. Dkt. 13. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion and request for stay, without prejudice, for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. <u>See</u> Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

Plaintiff Adlao, a resident of San Ramon, California, has been employed by Defendants since 2003 as an Appraiser. Compl. ¶ 5. On or about November 9, 2006, Adlao countersigned an offer letter which was presented to her by Bear Sterns Residential Mortgage Corporation ("BSRM"). Lowell Decl. ¶ 5 & Ex. A. As part of the offer, Plaintiff was required to sign a separate arbitration agreement, styled as an "Arbitration of Disputes" ("2006 Arbitration Agreement"), which was attached as Exhibit A to her employment offer letter. <u>Id.</u> The salient portion of the 2006 Arbitration Agreement, which Adlao signed on the same date, states that:

> You and the Company both specifically and knowingly and voluntarily agree to a pre-dispute arbitration clause so that should any controversy or dispute arise in connection with your employment, the cessation of your employment, or the interpretation of this offer letter, <u>you and the Company agree to arbitrate any and all such claims before a neutral panel of the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE") (pursuant to their respective rules, including those related to discovery) at a site in Los Angeles, California. In the event both the NASD and the NYSE decline jurisdiction in connection with any such matter, the parties agree instead to arbitration to be administered by JAMS</u> pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness at a JAMS hearing site in Los Angeles, California.
> …
>
> The parties' agreement to arbitrate disputes includes, but is not limited to, any claims [under] … the state and local laws of Los Angeles and California, including but not limited to … <u>the California Labor Code, and any other federal, state or local law … relating to wage and hour claims</u>, and any other statutory

> or common law claim. You and the Company agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or relating to employment with BSRM, the cessation of that employment, or the interpretation of this offer letter.

Id. (emphasis added).

On February 13, 2007, Adlao signed a second arbitration agreement ("2007 Arbitration Agreement").  Id. ¶ 6 & Ex. B.  The salient part of the second agreement provides as follows:

> In consideration for my employment or continued employment with Bear Stearns & Co, Inc., any of its affiliates and subsidiaries, including but not limited to, Bear Stearns Securities, Corp.; EMC; Bear Stearns Mortgage Capital Corporation; and Custodial Trust Company (together referred to herein as "Bear Stearns" or the "Firm"), Bear Stearns and I (the "Parties") hereby agree to arbitrate any and all such controversies, disputes and claims before a neutral panel of the <u>National Association of Securities Dealers, Inc.</u> (pursuant to its rules, including those related to discovery) in the location nearest to the office where I work.
>
> …
>
> <u>The Parties' agreement to arbitrate disputes includes, but is not limited to, … any claims relating to wage and hour claims and any other statutory or common law claims</u>.

Lowell Decl. ¶6, Exh. B.

Co-plaintiff Williams, currently a resident of Arizona, began working for Defendants in July 2006.  Compl. ¶ 6.  On or about November 7, 2006, Williams signed an offer letter and an attachment entitled Arbitration of Disputes.  The arbitration agreement is identical to the one signed by Adlao in 2006.  Lowell Decl. ¶ 7, Ex. C.  Williams worked in California from 2006 to 2008, and has worked from her home in Arizona from 2008 to the present.  Compl. ¶ 6.  Unlike Adlao, there is no evidence or allegation that Williams signed a second arbitration agreement.

### B.  PROCEDURAL HISTORY

On October 5, 2010, Plaintiffs filed the instant action against Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and EMC.  The six claims for relief are as follows:  (1) violation of the FSLA; (2) violation of California Labor Code §§ 510, 1194

and 1198; (3) failure to provide itemized wage and hour statements in violation of Labor Code § 226; (4) failure to indemnify for business expenses in violation of Labor Code § 2802; (5) failure to provide and/or authorize meal and rest periods in violation of Labor Code §§ 512 and 226.7; and (6) violation of California Business & Professions Code § 17200.[1]

The case originally was assigned to Magistrate Judge Edward Chen. On November 9, 2010, Defendants filed a declination to proceed before a magistrate judge. Dkt. 10. Before the case was reassigned to this Court, however, Defendants filed the instant motion to compel arbitration without first meeting and conferring with Plaintiffs. Schwartz Decl. ¶ 2, Dkt. 25. In its response to the motion, Plaintiffs state that they are amenable to submitting their claims to arbitration, but that the arbitration must proceed before JAMS, not FINRA. See Pls.' Opp. at 1, 3, Dkt. 24.[2] In particular, Plaintiffs point out that under the FINRA Code of Arbitration for Customer Disputes § 12200, FINRA only accepts arbitrations from members or customers of its member banks, and that Plaintiffs are neither. Id. In addition, they assert that under § 12204, FINRA will not entertain class arbitrations. Id.

In their reply, Defendants counter that FINRA's rules governing <u>Customer</u> Disputes are inapposite, and that under its Code of Arbitration Procedure for <u>Industry</u> Disputes, FINRA may consider employment claims, provided that the parties have agreed to arbitrate of those claims before FINRA. See Defs.' Reply at 3-4, Dkt. 30. Defendants do not cite

---

[1] Federal wage claims cannot be filed as a class action under Rule 23, and instead, must be maintained as a "collective action." 29 U.S.C. § 216(b). "A 'collective action' differs from a class action." McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007). In a class action brought under Rule 23, all members of a certified class are bound by the judgment unless they opt-*out* of the suit. Id. In contrast, in a collective action under the FLSA, 29 U.S.C. § 216(b), only those claimants whose affirmatively opt-*in* by providing a written consent are bound by the results of the action. Id.

[2] Plaintiffs do not agree that their claims for injunctive relief under the UCL are arbitrable. See Cardenas v. AmeriCredit Fin. Servs. Inc., No. C 09-4978 SBA, 2010 WL 3619851, at *8-*9 (N.D. Cal. Sept. 13, 2010) (finding that UCL claims for injunctive relief cannot be arbitrated).

any particular section of the Industry Disputes Code to support of their argument. Additionally, Defendants argue, for the first time, that the Court should stay the action pending the Supreme Court's forthcoming decision in Concepcion. See id. at 10-11.[3] Defendants did not meet and confer with Plaintiffs regarding their proposal to temporarily stay the action pending a decision in Concepcion. Because Defendants inappropriately included their stay request for the first time in their reply, the Court granted both parties leave to file surreply briefs with respect to Defendants' stay request. Dkt. 37, 40.[4]

In their surreply, Plaintiffs contend that a stay is unnecessary; however, in the event the Court is inclined to stay the proceedings, Plaintiffs request that the Court equitably toll the statute of limitations to avoid prejudice to the class. See Pls.' Surreply at 2-6, Dkt. 37. In turn, Defendants filed a response to Plaintiffs' surreply in which they continue to advocate for a stay, but oppose Plaintiffs' request for equitable tolling. See Defs.' Response to Surreply at 4-6, Dkt. 40. The Court discusses these issues seriatim.

---

[3] The question presented in the writ petition filed in Concepcion is: "Whether the Federal Arbitration Act preempts States from conditioning the enforcement of an arbitration agreement on the availability of particular procedures - here, class-wide arbitration - when those procedures are not necessary to ensure that the parties to the arbitration agreement are able to vindicate their claims." See Pet. for a Writ of Cert., No. 09-893, 2010 WL 304265, at *i (U.S. Jan. 25, 2010).

[4] Defendants concede that they did not meet and confer with Plaintiffs prior to filing their motion to compel arbitration, but attempt to excuse their failure to do so on the ground that Magistrate Judge Chen's Standing Orders contain no such requirement. See Defs.' Reply at 2. Defendants assert that after the case was reassigned to this Court, "in recognition and in compliance with this Court's Standing Orders for Civil Cases," they met and conferred with Plaintiffs' counsel regarding the issues raised in their motion. Id. However, the record shows that it was Plaintiffs—not Defendants—who initiated the meet and confer process. See Schwartz Decl. ¶ 4. Even then, it took Defendants almost a month to respond to Plaintiffs' request to meet and confer. Id. Moreover, Defendants fail to explain why they made no effort to meet and confer regarding their request to stay the action, which they made after the case was reassigned to this Court. As will be discussed below, Defendants' failure to meet and confer with opposing counsel has resulted in piecemeal and inchoate briefing of issues critical to this Court's ability to make an informed decision on the pending issues and requests.

## II. DISCUSSION

### A. MOTION TO COMPEL ARBITRATION

#### 1. Legal Standard

Under the Federal Arbitration Act ("FAA"), any party bound by an arbitration agreement that falls within the scope of the FAA may bring a petition in federal district court to compel arbitration. 9 U.S.C. § 4. When faced with a petition to compel arbitration, the district court's role is a discrete and narrow one. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.… If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Id. All doubts are to be resolved in favor of arbitrability. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

#### 2. Analysis

To determine the scope of the parties' arbitration agreement, the Court applies "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc v. Kaplan, 514 U.S. 938, 944 (1995). Under California law, contracts are to be interpreted to give effect to the mutual intention of the parties at the time of contracting. Cal. Civ.Code § 1638; Waller v. Truck Ins. Exch., 11 Cal.4th 1, 18 (1995). "[S]uch intent is to be inferred, if possible, solely from the written provisions of the contract," read in their ordinary and popular sense, unless it appears the parties used the terms in some special sense. AIU Ins. Co. v. FMC Corp., 51 Cal.3d 807, 822 (1995) (citing Cal.Civ.Code § 1639). "If the contract language is clear and explicit, it governs." Foster-Gardner, Inc. v. National Union Fire Ins. Co., 18 Cal.4th 857, 868 (1998) (internal quotations and citation

1  omitted).  The "interpretation of a contract generally presents a question of law for this
2  court to determine[.]"  <u>DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.</u>, 176
3  Cal.App.4th 697, 713 (2009).
4        The starting point for interpreting any agreement is the language of the agreement
5  itself.  <u>See</u> <u>Mt. Diablo Med. Cntr. v. Health Net of Calif, Inc.</u>, 101 Cal.App.4th 711, 722
6  (2002).  Here, the arbitration agreement states, in relevant part, that the parties agree to
7  arbitrate any employment-related disputes "before a neutral panel of the National
8  Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc.
9  ("NYSE")," and that "[i]n the event both the NASD and the NYSE decline jurisdiction in
10 connection with any such matter, the parties agree instead to arbitration to be administered
11 by JAMS …."  Lowell Decl. Ex. A.  Though raised by none of the parties, the Court notes
12 that by its express terms, the arbitration agreement only requires the employee to present
13 his or her employment-related claims to arbitration before either <u>the NASD or the NYSE</u>.
14 There is no requirement that Plaintiffs arbitrate their claims before FINRA. Though
15 Defendants appear to suggest that the Court should substitute FINRA in place of NASD
16 and NYSE as the successor to those entities, they fail to cite any provision of the arbitration
17 agreement or any legal authority to support such a conclusion.
18       The parties' arguments are likewise unhelpful with respect to Plaintiffs' counter-
19 request to proceed before JAMS.  The identically-worded 2006 Agreements executed by
20 Adlao and Williams both state that "[i]n the event both the NASD and the NYSE decline
21 jurisdiction in connection with any such matter, the parties agree instead to arbitration to be
22 administered by JAMS …."  <u>Id.</u>  However, Adlao signed a second arbitration agreement
23 which states that the parties "hereby agree to arbitrate any and all such controversies,
24 disputes and claims before a neutral panel of the National Association of Securities Dealers,
25 Inc."  Lowell Decl. ¶6, Exh. B.  The 2007 Agreement makes no reference to proceeding
26 before FINRA or JAMS.  Nor do the parties discuss which arbitration agreement is
27 controlling with respect to the claims of Adlao or what effect, if any, the lack of reference
28 to FINRA and/or JAMS has with respect to Defendants' motion to compel arbitration

before FINRA and Plaintiffs' counter-request to arbitrate before JAMS.  Given the lack of discussion or analysis regarding the aforementioned issues, the Court cannot make a fully informed decision as to whether to compel arbitration, and if so, whether FINRA or JAMS is the appropriate forum in which such arbitration should proceed.  See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").  The Court therefore denies Defendants' motion to compel arbitration, without prejudice.[5]

### B. DEFENDANTS' REQUEST TO STAY PENDING CONCEPCION

As an alternative matter, Defendants contend that the Court should stay the instant action pending the Supreme Court's decision in Concepcion.  Defs.' Reply at 10-11.  A federal court has discretionary authority to stay an ongoing proceeding, which is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  The power to stay the proceedings extends to stays pending resolution of separate judicial proceedings, and does not require the issues in such proceedings to be determinative of the action before the court.  Leyva v. Certified Grocers, 593 F.2d 857, 863-64 (9th Cir. 1979).  In determining whether a stay is appropriate, the court must consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  Landis, 299 U.S. at 254; accord Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005).

Notably, Defendants make no attempt to frame their request in accordance with Landis or its progeny.  See Defs.' Reply at 11.  Instead, Defendants belatedly attempt to make such a showing in their response to Plaintiffs' surreply.  See Defs.' Response to Pls.'

---

[5] The resolution of these issues precedes the Court's consideration of the remaining issues presented in the parties' respective memoranda.  Therefore, the Court does not reach those matters at this time.

1  Surreply at 2-3.  In addition, Defendants' response presents extensive argument in support
2  of their opposition to Plaintiffs' request that the Court equitably toll the statute of
3  limitations as to Plaintiffs' FSLA claims in the event of a stay.  The flaw in Defendants'
4  back-ended approach is that it deprives Plaintiffs of the opportunity to address arguments
5  that Defendants should have made in it moving papers.  See Ahanchian v. Xenon Pictures,
6  Inc.  624 F.3d 1253, 1263 (9th Cir. 2010) ("Our adversarial system depends on the
7  principle that all sides to a dispute must be given the opportunity to fully advocate their
8  views of the issues presented in a case.").  That flaw is even more glaring here, where
9  Defendants improperly presented their stay request in their reply brief—without first
10 meeting and conferring with Plaintiffs.  Due to Defendants' unfortunate approach to motion
11 practice, the Court declines to consider Defendants' stay request at this juncture.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to compel arbitration and alternative request to stay the proceedings pending the Supreme Court's decision in Concepcion are DENIED without prejudice.  Should Defendants desire to renew their motion, they shall first conduct a face-to-face meet and confer regarding all issues to be adjudicated in such motion and certify in writing that they have done so prior to renewing their motion.  Any renewed motion and opposition thereto may not exceed fifteen (15) pages and the reply may not exceed ten (10) pages.

2. The telephonic Case Management Conference currently scheduled for March 9, 2011 is CONTINUED to **June 16, 2011 at 3:15 p.m.**  Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement.  The joint statement shall be filed no later than ten (10) days prior to the conference and shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiffs shall be responsible

1 for filing the statement as well as for arranging the conference call.  All parties shall be on
2 the line and shall call (510) 637-3559 at the above indicated date and time.
3     3.    This Order terminates Docket 13.
4     IT IS SO ORDERED.
5 Dated:  March 10, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge